**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

PNC Bank, National Association,

    Plaintiff,

v.                                                      Case No. 8:08-cv-611-T-24MSS

Colonial Bank, N.A.,

    Defendant.
_____/

**ORDER**

This cause comes before the Court on Defendant's Motion to Dismiss Counts II, III and IV of Plaintiff's Complaint (Doc. No. 10). Defendant Colonial Bank ("Colonial") moves to dismiss Counts II, III, and IV of the Complaint based on Florida's economic loss doctrine and, in addition, seeks to dismiss Plaintiff's claim for exemplary damages on the grounds that Plaintiff has failed to allege sufficiently outrageous or malicious conduct to support such a claim. Plaintiff, PNC Bank, National Association ("PNC"), opposes the motion (Doc. No. 15).

**I.   Background**

In August of 2006, Colonial entered into a Participation Agreement (the "Agreement") with PNC's predecessor, Mercantile Mortgage Corporation ("Mercantile") with respect to a construction loan to borrower Venetian Bay of New Smyrna Beach, LLC ("Venetian Bay"). Under the Agreement, Mercantile agreed to fund up to $10 million of advances to Venetian Bay after Colonial advanced $26.5 million. Pursuant to the Agreement, Colonial agreed to supervise the collection and management of the loan.

In the Complaint, PNC alleges that Colonial grossly mismanaged the loan in violation of the Agreement. Specifically, PNC claims that Colonial breached the Agreement by: (1)

receiving payments from Venetian Bay and retaining all or part of such payments for its own account rather than forwarding the payments to Mercantile; (2) forwarding payments to Mercantile in an untimely manner well past the two days contractual period; (3) allowing additional advances to Venetian Bay without Mercantile's prior approval; and (4) waiving late fees owed by Venetian Bay without Mercantile's prior approval.  The Complaint asserts four causes of action against Colonial: Count I - Breach of Contract; Count II - Gross Negligence, Bad Faith or Willful Misconduct; Count III - Conversion; and Count IV - Breach of Trust and Fiduciary Duty.  The instant motion seeks dismissal of Counts II through IV and of PNC's claim for exemplary damages under all four counts.

## II.   Discussion

### A.   Motion to Dismiss Standard under Rule 12(b)(6)

In deciding a motion to dismiss, the Court is required to view the complaint in the light most favorable to the plaintiff.  *See Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000) (citing *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests.  *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (citation omitted).  As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (citation omitted).  While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief

above the speculative level." *Id.* (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. *See Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986).

### B.     The Economic Loss Rule

Colonial seeks to dismiss Counts II, III, and IV of the Complaint, arguing that because those tort claims merely duplicate PNC's breach of contract claims, they are barred under Florida's economic loss doctrine. In response, PNC contends that it has alleged sufficient additional facts to support tort claims independent from its breach of contract action.

Under Florida law, the economic loss rule provides that "parties to a contract can only seek tort damages if conduct occurs that establishes a tort distinguishable from or independent of [the] breach of contract." *Jones v. Childers*, 18 F.3d 899, 904 (11th Cir. 1994). The rule "is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Indemnity Insurance Co. of N. Amer. v. Amer. Aviation, Inc.*, 891 So.2d 532, 536 (Fla. 2004). The rule is premised on "the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process." *Id.* A party to a contract who attempts to circumvent the contract by asserting a claim for economic loss in tort "is, in effect, seeking to obtain a better bargain than originally made." *Id*. When parties are in privity, "contract principles are more appropriate than tort principles to resolve purely economic claims." *Id.* Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract. *Id.*

However, the mere existence of a contractual relationship between the parties does not categorically bar all tort actions in all cases. In *Indemnity Insurance*, the Florida Supreme Court "expressly limited" the economic loss rule and recognized certain exceptions to the rule, including finding that "where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract." *Id*. at 537; *see, e.g., Pershing Indus., Inc. v. Estate of Sanz*, 740 So.2d 1246, 1248 (Fla. 3d DCA 1999) (finding that claims for economic damage based on fraud in the inducement, conversion, and civil theft were independent torts and thus actionable despite the existence of a contract between the parties).

        **1.    Count II - Action for Gross Negligence, Bad Faith or Willful Misconduct**

In Count II, PNC asserts that Colonial's "intentional" withholding of payments received from Venetian Bay constitutes "gross negligence, bad faith or willful misconduct." (Pl.'s Compl. ¶ 21). Colonial argues that this cause of action is barred by the economic loss doctrine because PNC fails to allege any additional conduct which would make its tort claim separate and distinct from its breach of contract claim. PNC concedes that its gross negligence claim is based on the same misconduct which underlies the breach of contract claim, but argues that the parties to the Agreement essentially negotiated around the traditional confines of the economic loss rule by expressly reserving liability for certain tortious conduct in the Agreement itself. PNC bases its argument on Paragraph 14 of the Agreement, which provides, in pertinent part, that "[Colonial] shall not be liable under this Agreement to [Mercantile] for any action taken or omitted or for any error in judgment, except for [Colonial]'s material breach of this Agreement or *its owns gross negligence, bad faith or willful misconduct*" (emphasis added).

Clearly, PNC's negligence claim in Count II is based on the same alleged misconduct as its breach of contract claim in Count I. However, the Court agrees that the standard of care articulated in Paragraph 14 of the Agreement represents a negotiated allocation of economic risks and losses specifically agreed to by the parties. In this instance, the plain meaning of the language of the Agreement controls. Colonial has effectively waived any protection that the economic loss doctrine may have afforded it with regard to an action based on negligence, bad faith or willful misconduct. Therefore, the economic loss doctrine does not bar Count II of the Complaint and Colonial's motion to dismiss Count II is denied.

### 2. Count III - Conversion

In Count III of the Complaint, PNC asserts that the "wrongful retention of monies paid by Venetian Bay which are the property of Plaintiff" gives rise to a cause of action for conversion. (Pl.'s Compl. ¶ 25). Again, Colonial argues that the economic loss rule bars this claim because it is based on the same alleged conduct which forms the basis for the breach of contract claim and that, even if the claim is not barred, PNC cannot establish the requisite elements to state a cause of action for conversion. PNC contends that Florida law does not bar its claim and that it has properly pled all required elements of the conversion action.

Under Florida law, a "conversion" occurs when a party "asserts a right of dominion over chattel which is inconsistent with the right of the owner and deprives the owner of the right of possession." *Estate of Villanueva v. Youngblood*, 927 So. 2d 955, 959 (Fla. 2d DCA 2006). To maintain an action for conversion of money, the plaintiff must establish the existence of a "specific fund capable of separate identification." *Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co., LLC*, 125 F. Supp 2d 1093, 1100 (S.D. Fla. 2000). While

intentional torts like conversion are not necessarily barred by the economic loss rule, when the conversion action is "exactly coextensive with the nonperformance of an agreement between the parties," such an action may not stand. *Future Tech Int'l, Inc. V. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1569 (S.D. Fla. 1996).

In this case, PNC's conversion action is based solely on Colonial's alleged "wrongful retention" of funds that should have been paid to PNC under the Agreement. (Pl.'s Compl. ¶ 25). This allegation relates directly to the performance of the Agreement and is therefore "exactly coextensive" with PNC's breach of contract claim. *Future Tech Int'l, Inc.*, 944 F. Supp. at 1569; *see also Alex Hofrichter, P.A. v. Zuckerman & Venditti, P.A.*, 710 So.2d 127 (Fla. 3d DCA 1998) (holding that defendant's actions must be more than a failure to perform under a contract). PNC has failed to allege that its conversion claim is based on conduct which amounts to an independent tort, and it is therefore barred by the economic loss rule. Accordingly, Count III of the Complaint is dismissed.

### 3.    Count IV - Breach of Trust and Fiduciary Duty

Finally, in Count IV, PNC purports to allege a cause of action for breach of trust and fiduciary duty based on its allegation that Colonial "breached its fiduciary duties as a trustee of Mercantile's share of the funds paid by Venetian Bay by failing to remit, timely or not at all, such funds." (Pl's Compl. ¶ 29). Colonial argues that this claim is barred by the economic loss rule and, further, that PNC has failed to plead the requisite elements of a cause of action for breach of fiduciary duty. PNC counters that liability for breaches of trust is expressly preserved in the Agreement and that, in the alternative, the economic loss rule does not bar its claim because the rule does not apply to either statutory causes of action or "well-established common

law causes of action" like breach of fiduciary duty. *Comptech Int'l, Inc. v. Milam Commerce Park, Ltd.*, 753 So. 2d 1219, 1221 (Fla. 1999); *Moransais v. Heathman*, 744 So. 2d 973, 983 (Fla. 1999).

As to PNC's breach of trust claim, the Court agrees that statutory causes of action are not generally barred by the economic loss rule. *Comptech*, 753 So. 2d at 1221. However, in this case, PNC has not alleged a statutory cause of action. Rather, the entire breach of trust claim is premised on Colonial's alleged violation of Paragraph 16 of the Agreement, which provides that Colonial "shall be deemed a trustee of [Mercantile's] share" of payments received from Venetian Bay. PNC gives no grounds for its action other than this contractually-imposed duty. PNC's breach of trust claim is substantially indistinguishable from its breach of contract claim and is therefore barred by the economic loss rule.

As to PNC's claim for breach of fiduciary duty, the Florida Supreme Court in *Indemnity Insurance* discussed such claims and declined to list them as an exception to the economic loss rule. *Indemnity Insurance*, 891 So. 2d at 532. Furthermore, the Eleventh Circuit has followed *Indemnity Insurance* in affirming the dismissal of a breach of fiduciary duty action based on the economic loss rule. *Royal Surplus Lines Ins. Co. v. Coachman Indus., Inc.*, 184 Fed. Appx. 894 (11th Cir. 2006).

The only allegation given by PNC in support of the breach of fiduciary duty claim is that Colonial breached a fiduciary duty to PNC by "failing to remit, timely or not at all, such funds to Plaintiff." (Pl.'s Compl. ¶ 29). In so doing, PNC has done no more than allege that the very act that constitutes a breach of the Agreement - failing to remit payments - also constitutes a breach of fiduciary duty. PNC has failed to demonstrate any way in which these two claims differ and,

7

therefore, the breach of fiduciary duty claim is barred by the economic loss rule. Accordingly, Colonial's motion to dismiss Count IV of the Complaint is granted.

### C. Exemplary Damages

Colonial also moves to dismiss PNC's demand for exemplary damages. With respect to all four counts of the Complaint, PNC demands "exemplary damages, and such other legal and equitable relief as this Court may deem just and proper." Colonial argues that such damages are not recoverable under Count I as a matter of law because damages for breach of contract are generally limited to the pecuniary loss sustained. As to Counts II through IV, Colonial argues that PNC has failed to allege that Colonial acted with the requisite degree of outrageousness or maliciousness necessary to recover exemplary damages. In response, PNC contends that it has alleged sufficient facts to justify its prayer for exemplary damages as to all four counts.

The Court agrees that damages for a breach of contract are generally limited to the pecuniary loss sustained. Punitive or exemplary damages are not ordinarily recoverable in actions for breach of contract, even where the breach is willful or flagrant. *See Porter v. Wilson, Walch, Fortner, Robinson & Besse, M.D.'s, P.A.*, 384 So. 2d 190, 191 (Fla. 2d DCA 1980). However, a party may seek punitive damages in breach of contract cases where "the acts constituting a breach of contract also amount to a cause of action in tort." *Grupo Televisa, S.A. v. Telemundo Communications*, 485 F.3d 1233, 1242 (11th Cir. 2007). In such a case, the tort action "must be based on 'an intentional wrong, willful or wanted misconduct, or culpable negligence, the extent of which amounts to an independent tort." *Id.* (quoting *S. Bell Tel. & Tel. Co. v. Hanft*, 436 So. 2d. 40, 42 (Fla. 1983)).

In Count II, PNC brings an independent tort claim for gross negligence, bad faith or willful misconduct. In so doing, PNC has alleged sufficient intentional misconduct by Colonial to state a claim for punitive damages. Whether PNC is ultimately entitled to recover punitive damages is a factual issue that is not properly decided at this early stage of the litigation. Therefore, Colonial's motion to dismiss PNC's prayer for exemplary damages is denied without prejudice to reassert, if appropriate, on a motion for summary judgment.

**III.    Conclusion**

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendant Colonial's Motion to Dismiss Counts II, III and IV of Plaintiff's Complaint (Doc. No. 10) is **GRANTED IN PART and DENIED IN PART**. Defendant Colonial's Motion is **GRANTED** to the extent that Counts III and IV are dismissed with prejudice, otherwise the motion is **DENIED**.

2. Defendant Colonial is directed to file an answer to Counts I and II of the Complaint within twenty (20) days of the entry of this Order.

**DONE AND ORDERED** at Tampa, Florida this 24th day of July, 2008.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record