UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PNC BANK, NATIONAL ASSOCIATION,

    Plaintiff,

v.                                                    Case No. 8:08-cv-611-T-24TGW

BRANCH BANKING AND TRUST
COMPANY,

    Defendant.
_____/

## ORDER

This cause comes before the Court on Plaintiff PNC Bank, National Association's ("PNC") motion for partial summary judgment on its claims for breach of contract against Defendant Branch Banking and Trust Company ("BB&T"). (Doc. No. 35.) Defendant filed a response in opposition. (Doc. No. 40.) For the reasons stated herein, the motion is denied.

**I.    Background**

The following facts are undisputed: This lawsuit arises out of a loan participation agreement ("the Participation Agreement" or "the Agreement") entered into in August 2006 between Colonial Bank, N.A. ("Colonial"), the predecessor-in-interest of Defendant BB&T, and Mercantile Mortgage Corporation ("Mercantile"), the predecessor-in-interest of Plaintiff PNC. The Participation Agreement related to a $36,500,000 loan made by Colonial to Venetian Bay of New Smyrna Beach, LLC ("Venetian Bay" or "the borrower"), to fund the construction of a residential development. The underlying loan was evidenced by a promissory note, and its repayment was secured by a mortgage deed and security agreement, and a collateral assignment of rents and leases.

In their Participation Agreement, the banks clarified certain terms. The Agreement identifies that "[t]he Loan Documents evidence a revolving loan where the loan balance can increase and decrease throughout its term." Furthermore, under the Agreement, Mercantile agreed to fund up to $10,000,000 of the loan when the overall outstanding loan balance exceed $26,500,000. The Participation Agreement set out the method for this participation:

> The theory of this Participation Agreement between these parties is that Lender [Colonial] shall fund the first $26,500,000, and Participant [Mercantile] shall fund all amounts above $26,500,000. All principal payments from Borrower [Venetian Bay] shall be paid to participant [Mercantile] until the outstanding loan balance is paid down to $26,500,000, and thereafter, all principal payments shall be retained by Lender [Colonial].

This theory of participation is commonly referred to as a "last-in, first-out" ("LIFO") approach. By comparison, a revolving loan administered on a pro rata basis, or pari passeu basis, would require that each bank advance principal based upon fixed percentages and receive principal reductions in a similar fashion. Pursuant to the Agreement, Colonial was the "lead" bank, responsible for the collection, management, and administration of the loan.

During the term of the Agreement, Mercantile merged with PNC. PNC survived as the remaining corporation and assumed all rights and obligations of Mercantile, including Mercantile's rights and obligations under the Agreement.[1]

In approximately June 2007, after Mercantile became PNC, the parties discovered that there was a discrepancy regarding the balance of PNC's portion of the loan. It was then that Colonial realized that it had been administering the loan on a pro rata basis, rather than a LIFO

---

[1] "PNC" and "Mercantile" are used interchangeably to refer to the participant under the Participation Agreement.

basis. The administration of the loan on a pro rata basis caused Colonial to fund the loan in excess of its funding limit of $26,500,000.

In an email exchange dated August 2, 2007 between the banks' officers, Colonial proposed a solution as to how to return Colonial to within its funding limit for the loan ($26,500,000) and to thereafter administer the loan on a LIFO basis. The resolution was to use funds from the next principal reduction to bring Colonial's balance to $26,500,000, with the remaining balance to PNC. PNC's officer responded via email, "Okay to your proposal."

However, on April 1, 2008, PNC filed suit against Colonial. PNC brought claims for breach of contract (Count I), gross negligence, bad faith, or willful misconduct (Count II), conversion (Count III), and breach of trust and fiduciary duty (Count IV). Colonial denied these allegations and moved to dismiss Counts II, III, and IV. The Court granted Colonial's motion as to Counts III and IV. Thus, the only remaining claims are Counts I and II.

In its motion, PNC seeks summary judgment only on its breach of contract claim against Colonial (Count I). This claim is premised on Colonial's alleged mismanagement of the Venetian Bay loan and its allowance of Venetian Bay to use some of the loan proceeds for development of a golf course, in violation of the terms of the Participation Agreement.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th

Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.*

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Id.* In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## III. Discussion

PNC contends that it is entitled to summary judgment on its breach of contract claim because Colonial breached the Participation Agreement by mismanaging the Venetian Bay loan in two ways: (1) by administering the loan on a pro rata basis, rather than a LIFO basis; and (2) by permitting its funding of the loan to be used for improvements that were contrary to the Agreement. PNC contends that it suffered damages as a result of Colonial's material breaches of the Participation Agreement.

To succeed on a breach of contract claim under Florida law, a claimant must establish three elements: (1) a valid contract; (2) a material breach; and (3) damages. *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008). Here, the parties do not dispute the validity of the Participation Agreement at issue. Rather, their dispute is whether Colonial breached the Agreement, whether PNC suffered damages as a result of that breach, and whether

4

PNC waived its right to seek relief for the alleged breach. As will be discussed, factual issues regarding those elements remain, thereby precluding the entry summary judgment.

### A. Breach

#### 1. Whether Colonial Breached the Agreement by Failing to Administer the Loan on a LIFO Basis

PNC alleges that Colonial mismanaged the loan by failing to administer PNC's participation on a LIFO basis, as contemplated in Section 6 of the Participation Agreement. PNC contends that, despite the fact that the overall loan amount exceeded $26,500,000 at all times, Colonial failed to have PNC fund the entire amount of all requests for advances made by Venetian Bay. Furthermore, PNC contends that Colonial failed to remit the full amount of every principal repayment it received from Venetian Bay to PNC. PNC asserts that the risk of these errors must fall on Colonial because it was Colonial who was responsible for collecting funding from PNC and for remitting payments from Venetian Bay to PNC.

Colonial does not dispute that it was the lead bank responsible for the management of the loan. Moreover, Colonial admits that it administered the loan on a pro rata basis until August of 2007. Colonial explains that, in August of 2007, it discovered that it had been seeking funding from PNC for 27.397% of the borrower's draw requests, and that it was also remitting principal repayments to PNC at the same rate.

This admission might have been conclusive evidence of breach. However, as explained below, Colonial has presented sufficient evidence to raise a factual issue as to whether PNC waived its right to seek relief for this breach when it accepted Colonial's proposal to reconcile the banks' accounts to LIFO in August of 2007. (*See infra*, III. C.)

Colonial has also raised a factual issue as to whether it breached the Agreement during

the time period after the reconciliation in August of 2007 until PNC filed suit in April of 2008. Michelle L. Fuller, Vice President of the Construction Loan Administration Department of Colonial Bank, prepared a spreadsheet that shows the monetary transactions related to the Venetian Bay loan and the running loan balance. (Doc. No. 35, Ex.7.)[2] PNC admits, and Colonial's spreadsheet reflects, that after the August 2007 reconciliation, Colonial began to remit the full amount of principal repayments from the borrower to PNC. (Doc. No. 35 at 13.) PNC contends, however, that when Colonial made its first request for PNC to fund a draw request from the borrower in December of 2007, Colonial initially asked PNC to fund 27.397% of the draw request–only later asking PNC to fund the remaining 72.397%. Therefore, PNC contends, it is "wholly speculative" to assume that Colonial thereafter would have administered the funding or the repayments on a LIFO basis. Almost four months later, PNC filed suit.

The Court, however, cannot grant summary judgment based on speculations and assumptions. The evidence submitted thus far appears to show that, after the August 2007 reconciliation, Colonial began seeking funding and remitting principal payments to PNC at 100%, thereby complying with its obligation to administer the loan on a LIFO basis. The Court cannot speculate whether Colonial would have continued to administer the loan this way, had PNC not filed suit at this point. Moreover, more than ten months have passed since PNC filed its summary judgment motion, and the parties have not informed the Court whether principal draw requests or re-payments have been made (or, at what percentage) since the filing that would demonstrate whether Colonial administered the loan on a LIFO basis after August 2007.

---

[2] Colonial also submitted an affidavit from Michelle Fuller in which she explains the entries on the spreadsheet and the August 2007 reconciliation.

## 2. Whether Colonial Breached the Agreement by Permitting the Borrower to Fund Golf Course Construction with Loan Proceeds

PNC next contends that Colonial violated the Agreement by permitting Venetian Bay to fund the development of a golf course with the loan proceeds. PNC argues that the parties agreed "that the Loan would not fund any advances for the construction or development of the golf course that was included in the developer's plan–and that instead, the developers would fund the golf course with their own funds." (Doc. No. 35, p. 16-17.) PNC contends that Colonial knew that it could not appropriately seek funding from PNC for any golf course construction, so Colonial attempted to pass off these funding requests as something other than for golf course construction.

However, PNC does not cite to, and the Court is unable to locate, any provision in the Agreement or loan documents that restricts or limits Venetian Bay's ability to use the funds for development of a golf course. PNC cites to the provision in the Agreement that states that its obligation to make funding advances to the borrower was contingent upon PNC's receipt of notice from Colonial that "all conditions precedent to the funding amount requested *pursuant to any agreement pertaining to the Loan Documents* have been satisfied." (Agreement at ¶ 6 (emphasis added)). But, PNC has failed to identify any provision in the loan documents evidencing an agreement that the funds would not be used for development of a golf course.

Instead, PNC points to a loan request form, loan committee documents, and an internal Colonial email–all of which are dated *after* the parties entered into the Participation Agreement–to support its contention. These documents do not establish, as a matter of law, the existence of the alleged golf course restriction. And, even if these documents did predate the Participation Agreement, any terms that they contain cannot be enforced because the integration

clause contained in the Participation Agreement makes clear that the Agreement and certain other loan documents "embody the entire agreement and understanding between the parties." (Agreement at ¶ 29.) PNC has not shown that loan committee documents were incorporated into the Agreement, and therefore, any proposed terms contained therein cannot be enforced. Moreover, under the parol evidence rule, "[e]vidence of a prior or contemporaneous oral agreement is inadmissible to vary or contradict the unambiguous language of a valid contract. This rule applies when the parties intend that a written contract incorporate their final and complete agreement." *Ungerleider v. Gordon*, 214 F.3d 1279, 1282 (11th Cir. 2000).

Furthermore, even if the parties' Agreement precluded the use of loan proceeds for golf course construction, whether the loan proceeds were in fact used for golf course construction is a question of fact that cannot be resolved on summary judgment. PNC's evidence of a breach of this alleged agreement consists of an inspection report submitted by Colonial, a Colonial internal email, and a screen print from Colonial's computerized accounting system. The Court has reviewed these documents and concludes that they do not conclusively establish that the loan proceeds were used for actual golf course construction, as opposed to other permissible work.

**B.     Damages**

PNC contends that Colonial's failure to administer the loan on a LIFO basis, which would have resulted in Colonial's remitting to PNC the full amount of every principal repayment it received from Venetian Bay, caused PNC to suffer damages. Notably, PNC is *not* seeking damages in the form of interest it would have been owed on money it would have loaned above the $26,500,000 threshold, had Colonial administered the loan on a LIFO basis for the entire term of the loan. Rather, PNC seeks to recover payment for the balance of its portion of the

8

loan, which, as of November 1, 2008, was $9,012,758.72.[3] The parties appear to agree that PNC's balance, as of November 1, 2008, was $9,012,758.72, as Colonial's own spreadsheet reflects this balance. (Doc. No. 35, Ex.7.)

Nevertheless, PNC still has not conclusively shown that it has suffered any damages. The parties do not dispute that the August 2007 reconciliation brought PNC's loan participation back into balance. In other words, immediately after the reconciliation, there was no difference between what PNC's balance actually was ($9,107,156.06) and what it would have been if Colonial had managed the loan on a LIFO basis up to that point.

After the reconciliation, Colonial began making funding requests and remitting principal payments to PNC on a LIFO basis. By November 1, 2008, PNC's loan balance was $9,012,758.72. However, PNC has not established as a matter of law that it suffered *damages* of $9,012,758.72 because, under the terms of the Participation Agreement, PNC was *obligated* to loan up to $10,000,000. As stated previously, the Court cannot speculate whether Colonial would have continued to administer the loan on a LIFO basis, had PNC not filed suit. Moreover, in the time that has passed since PNC filed its motion, funding requests or principal re-payments may have altered this balance.

Additionally, Colonial has submitted evidence that, on December 28, 2007, it was forced to fund 100% of the borrower's funding request, in the amount of $832,837.42, when PNC

---

[3]PNC argues that its injury from Colonial's funding of golf course improvements is part and parcel of the $9,012,758.72 loan balance. According to PNC, the improper advances funded for golf course construction represented $5,806,592 of its total loan balance. PNC contends that it is entitled to this amount, even if the Court determines that Colonial did not breach the Agreement by failing to remit the full amount of the borrower's principal on a LIFO basis. However, as discussed, there are factual issues regarding whether the Agreement prohibited funding for golf course improvements, and whether PNC suffered damages as a result.

refused to continue performing under the Participation Agreement. According to Colonial, this caused it to be over-advanced above the $26,500,000 threshold provided for in the Agreement. Therefore, Colonial contends that it was Colonial–and not PNC–that suffered damages. For these reasons, there are factual issues regarding damages that preclude summary judgment.

### C. Affirmative Defenses

Colonial contends that summary judgment must be denied for the additional reason that its affirmative defenses bar PNC's breach of contract claim. Specifically, Colonial asserted five affirmative defenses: (1) that PNC failed to mitigate its damages; (2) that PNC consented to all actions by Colonial, and thus waived its right to object; (3) that PNC breached its implied covenant of good faith and fair dealing by taking action to frustrate the Participation Agreement's purpose and performance; (4) that PNC repudiated its duty of performance under the Agreement by bringing this action; and (5) that paragraph 14 of the Agreement bars PNC's claims.[4]

Colonial focuses on its affirmative defense of waiver, arguing that PNC consented to its proposed resolution of the prior pro rata administration of the loan and thus waived its right to object. "Under Florida law, waiver is the voluntary and intentional relinquishment or

---

[4] Upon review of Colonial's "Answer to Counts I and II of Complaint," located at docket number 23, filed August 12, 2008, it appears that the page containing the affirmative defenses (the fourth page) is missing from the filing. However, Colonial's affirmative defenses to the breach of contract claim can be found in its earlier-filed "Answer and Affirmative Defenses to Count I of Plaintiff's Complaint," which is located at docket number 11, filed on April 23, 2008.
    Because PNC had notice of Colonial's affirmative defenses to the breach of contract claim, and therefore was not prejudiced by the inadvertent failure to file the fourth page of docket number 23, the Court shall consider the affirmative defenses as alleged in docket number 11. Furthermore, Colonial is directed to re-file its complete answer and affirmative defenses to Counts I and II, including all pages, no later than January 20, 2010. Colonial is not permitted to make any alterations to the filing.

abandonment of a known and existing right or privilege which, except for the waiver, the party would have enjoyed." *Pajcic v. Am. Gen. Life Ins. Co.*, 419 F. Supp. 2d 1380, 1382 (M.D. Fla. 2006) (citing Raymond *James Fin. Servs. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005)). Waiver can be established through express language or inferred by conduct. *Id.* "Whether a waiver has occurred in any given situation is generally a question of fact." *Hill v. Ray Carter Auto Sales*, Inc., 745 So. 2d 1136, 1138 (Fla. 1st DCA 1999).

In support of its waiver affirmative defense, Colonial points to an email exchange between Jim Hogan of Colonial and John Long of PNC, in which the two discuss resolution of Colonial's pro rata administration of the loan. (Doc. No. 35, Ex. 9.) In response to Hogan's proposed resolution of the issue, Long responds simply, "Jim: Okay to your proposal. John." (*Id.*) Based on this communication, the Court concludes that Colonial has raised a question of fact regarding waiver; i.e., whether PNC relinquished its right to seek relief for Colonial's alleged mismanagement of the loan by agreeing to Colonial's proposed resolution of the dispute.

## IV. Conclusion

In conclusion, the Court finds that genuine issues of material fact remain regarding the following issues: (1) whether Colonial breached the Participation Agreement by administering the loan on a pro rata basis, rather than a LIFO basis, or by permitting funding of the loan to be used for improvements that were contrary to the Agreement; (2) whether PNC was damaged by Colonial's alleged breach; and (3) and whether PNC waived its right to object to Colonial's actions under the Agreement. Therefore, PNC's motion for summary judgment (Doc. No. 35) must be **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 14th day of January, 2010.

Copies to:

Counsel of Record

                                    */s/ Susan C. Bucklew*
                                    SUSAN C. BUCKLEW
                                    United States District Judge