UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PNC BANK, NATIONAL ASSOCIATION,

    Plaintiff,

vs.                                                                       Case No. 8:08-CV-611-T-24-TGW

BRANCH BANKING AND TRUST
COMPANY,

    Defendant.
_____/

## **O R D E R**

This cause comes before the Court for consideration of a Motion for Attorneys' Fees filed by Defendant Branch Banking & Trust Co. ("BB&T"). (Dkt. 91.) Plaintiff PNC Bank, National Association ("PNC") filed a response in opposition to the motion. (Dkt. 99.) Also before the Court is PNC's Motion for Court to Review Clerk of Court's Taxation of Defendant's Bill of Costs and BB&T's response. (Dkt. 102, 105.)

**I.    Background**

PNC filed this lawsuit against Colonial Bank, N.A., predecessor in interest of certain assets of BB&T (hereinafter, BB&T), asserting four claims: 1) breach of contract; 2) gross negligence, bad faith and willful misconduct; 3) conversion; and 4) breach of trust and fiduciary duty. On July 24, 2008, the Court granted in part BB&T's motion to dismiss PNC's claims for conversion and breach of trust and fiduciary duty, finding that those claims were barred by the economic loss rule (Dkt. 22.) This left PNC's remaining claims for breach of contract and for gross negligence, bad faith or willful misconduct.

The Court held a non-jury trial on February 23-25, 2010. On March 8, 2010, the Court

issued its Order granting judgment for BB&T on the two remaining claims. (Dkt. 89.) The Court found: (1) that PNC waived its right to seek remittance of 100% of Venetian Bay's principal payments that BB&T collected before August 3, 2007; (2) that PNC did not suffer any damages based on BB&T's failure to initially administer the parties' participation in the loan on a LIFO basis; (3) that the evidence did not support a finding of gross negligence, bad faith, or willful misconduct; and (4) that there was no enforceable agreement in existence between BB&T and PNC that prohibited Venetian Bay from using the loan proceeds for golf course expenditures.

In this final Order, the Court reserved jurisdiction to hear and determine any motions for attorneys' fees and costs. Final judgment in favor of BB&T was entered on March 9, 2010. (Dkt. 90.)

## II.     Entitlement to Attorneys' Fees and Costs

BB&T argues that it is entitled to its attorneys' fees and costs for defending this action pursuant to the attorneys' fees and costs provision in the Participation Agreement. Paragraph 26 of the Participation Agreement provides:

> In connection with any litigation, including appellate proceedings, arising out of or by reason of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and court costs should an attorney be employed to enforce the terms of the Agreement.

BB&T contends that, because the parties contractually agreed that the prevailing party would be liable for attorneys' fees and costs, the Court must enforce that contract term. *Davis v. Nat'l Med. Enters., Inc.*, 253 F.3d 1314, 1321 (11th Cir. 2001) ("When the parties to a contract determine that the prevailing party in any litigation shall be entitled to attorneys' fees, it is the court's duty to enforce the attorneys' fees provision in the parties' contract.").

PNC, however, disputes BB&T's entitlement to attorneys' fees and costs. PNC argues that, when Paragraph 26 is construed strictly, it provides for attorneys' fees and costs only when those fees and costs are incurred to "enforce the terms of the Agreement." According to PNC, BB&T spent significant time and costs asserting defenses and litigating motions that did not seek to *enforce* any term in the Agreement.

For example, PNC contends that BB&T's defenses of waiver (that PNC waived any right to recover payment) and "no damages" (that PNC did not suffer any damages from BB&T's breach) do not come from, or depend on, any term in the Participation Agreement. Additionally, PNC argues that BB&T should not recover its fees and costs for successfully defending PNC's tort claims for bad faith, gross negligence, breach of fiduciary, and conversion. According to PNC, the defense of those claims was not based on the enforcement of any contractual term, but rather, was based on attacking the legality of those tort claims. Lastly, PNC contends that BB&T should not recover any fees and costs for its motion to strike PNC's expert witness, a motion that was ultimately denied. PNC asserts that BB&T's arguments in that motion arose from case law regarding the admissibility of expert testimony, rather than from any contractual term.

The Court is not persuaded by PNC's argument. A defendant in a breach of contract case may be entitled to attorneys' fees and costs when, in defending himself, the defendant is in essence seeking to uphold and enforce its rights under the contract. *Casarella, Inc. v. Zaremba Coconut Creek Parkway Corp.*, 595 So. 2d 162 (Fla. 4th DCA 1992). In *Casarella*, a tenant sued its landlord for breach of the lease agreement, but voluntarily dismissed the suit on the day of trial. *Id.* at 163. Florida law authorized the defendant-landlord to recover fees under these

circumstances. *Id.* The tenant-plaintiff, however, argued that the landlord should not recover any fees because it was not *enforcing* any of its rights under the lease by defending itself against the suit. *Id.* The Florida state court rejected that argument and found that the landlord-defendant was entitled to recover its fees. *Id.* It held that the provision in the lease did not require the landlord to initiate the suit in order to recover fees because, in defending itself, the landlord was trying to enforce its rights under the lease. *Id.*

Like the landlord in *Casarella,* BB&T was upholding and enforcing its rights under the Participation Agreement when it defended itself against PNC's claims. BB&T need not be in the offensive position of filing suit to force PNC to perform under the contract in order to recover its fees and costs. Rather, paragraph 26 provides for fees and costs to the prevailing party "[i]n connection with any litigation," "arising out of or by reason of this Agreement," if any attorney is hired to "enforce the terms" of the contract. The Court "must read the contract to give meaning to each and every word it contains, and . . . avoid treating a word as redundant or mere surplusage if any meaning, reasonable and consistent with other parts, can be given to it." *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009) (quotations and citations omitted).

BB&T asserted its waiver and "no damages" defenses, as well as its motion to exclude PNC's expert, in an effort to determine its rights and obligations under the terms of the parties' contract; *i.e.*, whether BB&T owed PNC principal repayments that it collected before August 3, 2007. Furthermore, BB&T's defense of the tort claims involved the issue of whether BB&T was negligent or breached its fiduciary duties in the performance of the terms of the contract; *i.e.*, whether BB&T was negligent or breached its duties in administering the loan participation

4

agreement. Accordingly, BB&T's defense of this litigation arose out of the Participation Agreement and involved the enforcement of the parties' rights and obligations under the terms of the contract. As the prevailing party, BB&T therefore is entitled to an award of reasonable attorneys' fees and costs.

Finally, PNC also pursued a claim against BB&T for improperly funding a golf course with loan money. BB&T asserted several theories in defense of this claim, including that no money was spent to fund the golf course, that no agreement existed to prohibit golf course funding, and that such funding was proper under the terms of the Participation Agreement. The Court ultimately found that no agreement existed that prohibited golf course funding, and that in any event, the Participation Agreement authorized golf course funding. PNC now argues that, because BB&T did not prevail on its "no funding of the golf course with loan money" theory of defense, it should not recover its fees and costs associated with that theory.

BB&T need not separate its fees and costs according to each theory of defense. BB&T asserted several alternative theories, which it was entitled to do, and it ultimately prevailed as to two of those theories, thereby making it the prevailing party as to PNC's golf course claim. As the prevailing party on the golf course claim, it is entitled to recover its fees and costs.

### III. Amount of Attorneys' Fees

BB&T seeks to recover $362,854.00 for its attorneys' fees incurred in this case. In support of its motion, BB&T filed an affidavit by Christi Adams, Esq., counsel to BB&T, a chart of the hours worked and applicable billing rates for each attorney and paralegal for this case, a summary of legal services and fees relating to defending PNC's claims against BB&T, and an affidavit by an independent expert witness who was retained to review the billing records and

5

who opined that they were reasonable. (Dkt. 91, Exs. A, C, D, E.)

PNC contends that these materials lack sufficient detail to allow the Court to award attorneys' fees. In particular, PNC argues that there is nothing in these materials that states that the fees listed were actually charged to BB&T, or that BB&T paid any of these fees. The Court rejects this argument. Reviewing the motion in connection with the supporting materials, it is clear that BB&T is seeking to recover the fees it was charged by its counsel. *See* Adams's aff. at ¶7, line 2 (discussing the rates "charged"); Motion at pg.8, ¶ 1 (stating that the "amount of time and the rates charged" are reasonable). Moreover, the attorneys' fees provision allows the prevailing party "to recover reasonable attorneys' fees and court costs." PNC has not cited any authority–either in the attorneys' fees provision or in the law–that would require BB&T's counsel to show that it is seeking reimbursement only of fees already charged and paid. BB&T has shown that it is seeking fees that it was charged by its counsel.

PNC asserts four other arguments attacking BB&T's attorneys' fees motion. First, PNC argues that BB&T is not entitled to recover fees incurred before the date of the filing of this lawsuit because BB&T has not shown that these fees were incurred to "enforce" any term in the contract. The Court has already rejected this argument above. The Court finds that the limited pre-suit fees were incurred "[i]n connection with any litigation . . . arising out of or by reason of [the] Agreement" and are therefore recoverable.

Second, PNC argues that BB&T should not recover the significant fees incurred in connection with its motion to strike PNC's expert witness because that motion was denied and because it was irrelevant to the outcome of the case. The Court again rejects this argument because the fees were incurred "[i]n connection with any litigation . . . arising out of or by reason

of [the] Agreement," and are therefore recoverable. BB&T need not show that the motion was successful in order to recover its fees.

Third, PNC argues that BB&T cannot recover fees charged for depositions that were taken for both this case and the related "Cape Haze case" pending before Judge James D. Whittemore. PNC argues that it is impossible to determine from the information provided whether and how the time spent in these depositions was allocated between this lawsuit and the Cape Haze case. The Court rejects this argument because, again, BB&T is entitled to recover all of the fees incurred "[i]n connection with any litigation . . . arising out of or by reason of [the] Agreement." BB&T's right to recover is not limited by the fact that some of the depositions were taken for both pending cases.

Finally, PNC contends that the Court must review the actual invoices sent to and paid by BB&T in order to determine the amount of fees recoverable. Again, as stated previously, the Court rejects this argument because, upon review of the affidavits and charts submitted by BB&T's counsel, it is clear that BB&T is seeking to recover the fees it was charged by its counsel. The materials that BB&T submitted provide sufficient information to make an attorneys' fees determination.

The Court has reviewed the hourly billing rates for BB&T's attorneys, including James S. Grodin, John R. Hamilton, Christi R. Adams, Anthony D. Conti, Christopher S. Linde, Barbara J. Leach, and Julie A. Angelini, and finds them to be reasonable and customary for counsel with commensurate experience in the Middle District of Florida. Furthermore, the rates charged are reasonable considering the monetary amount in controversy, the facts of the case, the complexity and content of the issues involved in the case, and the results achieved by BB&T.

However, the hourly billing rates for the paralegals who worked on this matter, Stephanie Scott and Reyna Gray, exceed the rates customarily charged by paralegals with commensurate experience in this area. The Court has reduced the hourly rate for both paralegals to $140.

The total number of billable hours expended in this case through March 19, 2010 was 1008.55. The Court finds that this amount of time spent by BB&T's counsel and paralegals in defending against PNC's claims was reasonable. The total number of billable hours multiplied by the rates charged (as reduced by the Court for paralegals) through March 19, 2010 is $356,090.75. Accordingly, BB&T is entitled to recover its reasonable attorneys' fees in the amount of $356,090.75.

## IV. Amount of Costs

On March 23, 2010, BB&T submitted its Proposed Bill of costs to the Clerk pursuant to Rule 54(d) of the Federal Rules of Civil Procedure. (Dkt. 92.) On April 6, 2010, PNC filed its objections to the Bill of Costs. (Dkt. 98.) On April 8, 2010, the Clerk taxed all against PNC in the amount of $21,254.87. (Dkt. 101.) On April 15, 2010, PNC filed its Motion for Court to Review Clerk of Court's Taxation of Defendant's Bill of Costs. (Dkt. 102.) BB&T filed its response to that motion on May 3, 2010. (Dkt. 105.)

As the prevailing party, pursuant to Rule 54(d), BB&T is entitled to recover its costs in this matter. Specifically BB&T is entitled to recover those costs enumerated in 28 U.S.C. Sections 1821 and 1920. In its response to the motion, BB&T conceded that some of the costs it sought in its initial Bill of Costs are not taxable. Therefore, BB&T submitted an Amended Itemization of Bill of Costs and is now seeking $9,379.31 in costs.

### A. Witness Fees and Travel Expenses

PNC's first argument is that BB&T may not recover expert fees beyond the $40 per day witness fee allowed under 28 U.S.C. Section 1821(b). *See Crawford Fitting Co. v. J.T. Gibbons*, Inc., 482 U.S. 437, 442 (1987). BB&T concedes this point, and is now seeking only $40 per day witness fee for each of its four witnesses.

PNC also argues that BB&T failed to submit sufficient information to substantiate its request for witness travel expenses. In its Amended Itemization of Bill of Costs, BB&T has provided a breakdown of the witness travel expenses that it is seeking. Section 1821(c) provides for a travel allowance for mileage, toll charges, and parking fees for a witness incurring such expenses. BB&T has provided a breakdown of its witnesses' mileage, toll charges, and parking fees. These costs are recoverable by BB&T pursuant to the plain language of the statute.

Section 1821(d) provides for a subsistence allowance for a witness who is required to stay overnight; however, that allowance may not exceed the maximum per diem allowance prescribed by the Administrator of General Services. BB&T has provided a breakdown of its witnesses' subsistence allowance. The witnesses live in or around Orlando and New Smyrna Beach, Florida. Based on the travel time from Orlando and New Smyrna Beach to Tampa, the witnesses were required to obtain overnight lodging, as it was impractical for the witnesses to return home each day.

Pursuant to the General Services Administration, the domestic per diem rate in Tampa for lodging is $120.00 and $51 for food, for a total per diem rate of $171.00. The total amount that BB&T is seeking to recover for its witnesses' lodging and food costs exceeds the per diem rate. Therefore, the Court shall reduce the amount that BB&T may recover.

For witness Jim Hogan, the Court reduces the taxable lodging costs to $120 (from the

9

$323.68 charged), which reduces the total amount of taxable costs and fees to $426.47 for this witness. For witness Michelle Fuller, the Court reduces the taxable lodging costs to $120 per day for two nights (from the $323.68 per day charged), and reduces the food costs to $51.00 (from the $80.57 charged), which reduces the total amount of recoverable costs and fees to $549.00 for this witness. For witness Jerry Johnson, the Court reduces the taxable lodging costs to $120 (from the $323.68 charged), which reduces the total amount of recoverable costs and fees to $485.48 for this witness. Finally, for witness Jim Cross, the Court reduces the taxable lodging costs to $120 (from the $323.68 charged), and reduces the food costs to $51.00 (from the $68.27 charged), which reduces the total amount of recoverable costs and fees to $397.00 for this witness. Accordingly, BB&T may recover $1,857.95 in taxable witness fees and travel expenses.

  **B.**  **Photocopies**

The Clerk of Court taxed PNC $4,526.46 in exemplification and/or copying charges. PNC objects to these costs on the grounds that BB&T can recover costs only for copies of materials actually prepared for presenting evidence to the court at trial. However, BB&T is entitled to recover copy costs for discovery, pleadings, correspondence, documents provided to opposing counsel, exhibits, and documents provided to the Court. *Desisto College, Inc. v. Town of Howey-in-the-Hills*, 718 F. Supp. 906, 913 (M.D. Fla. 1989).

BB&T's Amended Itemization of Bill of Costs details the breakdown of the copy charges attributable to discovery, exhibits for depositions, and exhibits for trial. Pursuant to 28 U.S.C. Section 1920, all of these copy costs are recoverable.

PNC specifically objects to a copy charge of $891.55 for the "Creation of overlay for

demonstrative, overlay of site with transparencies, covert to PowerPoint, convert excel spreadsheet data from expert report to PowerPoint slides." BB&T concedes that a PowerPoint presentation as a computer animation is not recoverable under Section 1920. Nevertheless, this charge also included the reproduction of an oversized map of the property and development at issue here, which is recoverable under Section 1920. *See Arcadia Fertilized, L.P. v. MPW Indust. Serv., Inc.*, 249 F.3d 1293, 1297 (11th Cir. 2001) (concluding that costs for oversize documents are taxable under § 1920(4)). Accordingly, BB&T argues that half of the $891.55 copying charge, or $445.77, is taxable. The Court agrees. Therefore, in total BB&T is entitled to recover $4,019.33 for copy costs.

### C. Deposition Transcripts

The Clerk of Court taxed PNC $2,436.79 for deposition transcripts. PNC has no objection to the majority of these costs. PNC does, however, dispute BB&T's entitlement to costs for the deposition transcript of Darren Sweeney, a PNC employee. PNC contends that Sweeney's testimony related to the Cape Haze case and was unrelated to this case.

However, as noted by BB&T, Sweeney's deposition was listed on the parties' Final Joint Exhibit List and was subsequently admitted into evidence without objection by either party. (Dkt. 85 at 8; Dkt. 93 at 8.) "It is not necessary to use a deposition at trial for it to be taxable." *EEOC v. W&O, Inc.*, 213 F.3d 600, 621 (11th Cir. 2000). Accordingly, the Court rejects PNC's argument and finds that BB&T is entitled to recover $311.95 for the Sweeny deposition transcript, in addition to $2,124.84 for the other transcript fees that PNC has no objection to. The Court finds that those deposition transcripts were "necessarily obtained for use in the case." *Id.* (quotations and citations omitted). In total, BB&T is entitled to recover $2,436.79 for
11

deposition transcripts.

Based on the above, BB&T is entitled to recover the following costs: $1,857.95 in witness fees and costs; $4,019.33 in photocopy costs; and $2,436.79 in deposition transcript costs. In total, BB&T is entitled to $8,314.07 in costs from PNC as the prevailing party in this case.

**V.      Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that BB&T's Motion for Attorneys' Fees (Dkt. 91) is **GRANTED** to the extent that BB&T is entitled to recover $356,090.75 in attorneys' fees from PNC. Furthermore, PNC's Motion for Court to Review Clerk of Court's Taxation of Defendant's Bill of Costs (Dkt. 102) is **GRANTED IN PART AND DENIED IN PART**. The Bill of Costs that was originally taxed against PNC in the amount of $21,254.87 (Dkt. 101) is hereby reduced to $8,314.07.

**DONE AND ORDERED** at Tampa, Florida, this 16th day of July, 2010.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge